**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| CHARLES EARL ALFORD, | : | |
| | : | CIV. NO. 23-20440 (RMB-EAP) |
| Plaintiff | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| SAMUEL J. PLUMERI, et al., | : | |
| | : | |
| Defendants | : | |

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon the civil rights complaint under § 42 U.S.C. 1983, as supplemented, (Compl., Dkt. Nos. 1, 3, 5, 6) by *Pro Se* Plaintiff Charles Earl Alford, who was a prisoner confined at South Woods State Prison in Bridgeton, New Jersey when he submitted the complaint.   Plaintiff's original application to proceed without prepayment of the filing fees under 28 U.S.C. § 1915(a) ("IFP application") was incomplete.   Therefore, the Court administratively terminated this matter.   (Order, Dkt. No. 7.)   Plaintiff is no longer incarcerated and has submitted an IFP application in compliance with 28 U.S.C. § 1915(a), which establishes his financial eligibility to proceed without payment of the filing fee. Therefore, the Court will reopen this matter, grant the IFP application, and file the complaint, as supplemented.   For the reasons discussed below, Plaintiff's complaint is dismissed without prejudice.

I.      *SUA SPONTE* DISMISSAL

When a person is granted IFP status, courts must review the complaint and *sua sponte* dismiss any claims that are:  (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief.   28 U.S.C. § 1915(e)(2)(B).   Courts, however, must liberally construe pleadings by *pro se* plaintiffs.   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   The legal standard for dismissing a complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), is the same as that for dismissal under Federal Rule of Civil Procedure 12(b)(6).   *See Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556.)

II.     **DISCUSSION**

A.   **The Complaint**

Plaintiff's complaint arises out of his arrest on April 18, 2022, in Pennsauken Township, New Jersey for firearm and controlled dangerous substance ("CDS") offenses, his subsequent revocation of parole on December 14, 2022, prior to

disposition of his criminal charges, and the New Jersey State Parole Board's ("NJSPB") denial of his parole application on July 7, 2023. (Compl., Dkt. No. 1; Suppl. Compl., Dkt. No. 3.) Plaintiff has named the following defendants in his complaint:

- Samuel J. Plumeri ("Plumeri"), Chairman ("NJSPB");

- Township of Pennsauken, New Jersey ("Pennsauken")

- Lieutenant Kevin Keys ("Keys"), NJSPB

- Eric Shenk ("Shenk"), NJSPB

- Robert Goodale ("Goodale"), NJSPB

- Shawn Murphy ("Murphy"), NJSPB

- James Jefferson ("Jefferson"), NJSPB

- Ronald H. Cathel III ("Cathel"), NJSPB

- Trudy Steinhart ("Steinhart"), NJSPB

- Kerry Cody ("Cody"), NJSPB

- Lexxus Matos ("Matos"), Police Officer, Pennsauken, New Jersey

- John Doe NJSPB Members

Because Plaintiff sues the NJSPB Defendants for damages, the Court construes his § 1983 claims as brought against them in their individual capacities.

### 1. Plaintiff's Arrest

Plaintiff alleges the following facts in his complaint. On April 18, 2022,

3

Patrolman Anthony Rodriguez of the Pennsauken Police Department lied in his police report to establish probable cause for Plaintiff's arrest.   Specifically, Rodriguez stated that he spoke to a witness who said Plaintiff had a gun, and that he and his fellow officer, Lexuus Matos, witnessed Plaintiff running with a backpack. The backpack was later found to contain a firearm and CDS.   Rodriguez said Plaintiff asked him for items which were found in the backpack.   Rodriguez lied when he said the incident was recorded on his body camera.   Matos disagreed with Rodriguez's description of the events leading to Plaintiff's arrest, but he failed to intervene by not reporting Rodriguez to a superior.

Plaintiff further alleges Matos attempted to coerce him into admitting his ownership of the firearm and CDS, and when this failed, she asked Plaintiff to sign a property release form.   Outside of his presence, Matos then handwrote "backpack" and "laptop computer" on the release form, for the purpose of incriminating Plaintiff.   Rodriguez and Matos failed to lodge the backpack into evidence. Instead, they released the backpack when Plaintiff was admitted to Camden County Jail, to make it look like Plaintiff had ownership.   Rodriguez used his false police report to obtain Plaintiff's arrest warrant.   Rodriguez then lied about the incident before a grand jury.   Rodriguez repeated his lies at Plaintiff's parole hearing. Plaintiff was confined due to the criminal charges initiated by Rodriguez.

Plaintiff alleges that the Township of Pennsauken's failure to discipline the wrongful conduct of its police officers in the past and its lack of police training

4

caused Rodriguez and Matos to frame him and falsely arrest him for possession of a firearm and CDS.   Plaintiff complained to Detective Anthony Angelone of the Internal Affairs Department, who failed to investigate the incident.   Plaintiff was unable to obtain the alleged body camera footage of his arrest.

### 2.    Plaintiff's Parole Revocation

On the day of his arrest on April 18, 2022, Plaintiff was serving a five-year term of mandatory parole supervision.   On April 19, 2022, Plaintiff's parole officer, Erik Shenk, learned that Plaintiff was arrested on charges of possession of a firearm and CDS.   The next day, Parole Officer Lieutenant Keys issued a parole warrant for Plaintiff, who was confined in Camden County Jail on pending criminal charges. The parole warrant caused a detainer to be placed against Plaintiff's release on bail. NJSPB has a policy not to revoke parolees' supervision while their related charges are pending in Court.   According to the complaint, although there are "exceptions for parole officers to self[-]issue warrants without Full Board approval … Keys misrepresented facts in his report in order to meet the exception's requirement." Plaintiff alleges Keys "allowed his bias against ex convicted citizens to corrupt his actions," and he assumed Plaintiff's guilt on the new charges.   Thus, Plaintiff alleges Keys lied in his report by finding that Plaintiff was a danger to the public, and he lied about the presence of immediate emergency circumstances for issuance of an immediate parole warrant.   Plaintiff does not allege any further facts concerning the content of Keys' report.   Shenk signed off on the parole violator warrant.   As a

result of the detainer, the Honorable Timothy T. Booth, New Jersey Superior Court Judge, denied Plaintiff pretrial release on the criminal charges.

On June 1, 2022, Plaintiff attended an initial parole revocation hearing. Hearing Officer Shawn Murphy presided over the hearing.   Plaintiff was not permitted to face his accuser, arresting officer Rodriguez.   Crediting Keys' charges in the parole violator warrant, Murphy found sufficient evidence that Plaintiff violated supervision conditions 11, 12, and 13:

> (11).   Refrain from owning or possessing any [] firearm, as defined in N.J.S.A. 2C:39-1f, for any purpose;
>
> (12).   Refrain from owning or possessing any weapon enumerated in N.J.S.A. 2C:39-1r[;]
>
> (13).   Refrain from the purchase, use, possession, distribution, or administration of any narcotic drug, controlled dangerous substance … except prescribed by a physician.

(Compl., Dkt. No. 1 at 34; *See* N.J. Admin. Code § 10A:71-6.4.)

On June 8, 2022, NJSPB Members Robert Goodale and James Jefferson conducted a Parole Board meeting regarding Plaintiff's initial parole revocation. Goodale and Jefferson upheld the parole warrant.   This caused Plaintiff's continued detention.   Plaintiff attended his final parole revocation hearing on November 27, 2022, by video conference from South Woods State Prison.   Hearing Officer Ronald H. Cathel, III presided over the hearing.   Cathel found Plaintiff guilty of violating parole conditions and 11 and 12.   Thus, Plaintiff served a 15-month technical

violation term of imprisonment for possession of a firearm.

On December 14, 2022, NJSPB Members Trudy Steinhardt and Kerri Cody participated in a Parole Board meeting where they affirmed Plaintiff's guilt on parole conditions 11 and 12.   Plaintiff alleges Steinhardt and Cody planned secretly to deprive him of remaining free on parole supervision while his criminal case was pending in court.   Steinhardt failed to intervene when Cody voted to revoke Plaintiff's parole.

Plaintiff filed an administrative appeal.   On April 26, 2023, unknown NJSPB Members participated in a full Parole Board appeal, where they conspired with each other to revoke Plaintiff's parole while his criminal charges were pending in court. In the meantime, on June 21, 2023, Assistant Prosecutor MacFeeters of the Camden County Prosecutor's Office dismissed the criminal charges against Plaintiff.

### 3.   Plaintiff's Parole Hearing

On July 7, 2023, Plaintiff attended a Parole Panel hearing from South Woods State Prison.   NJSPB Members Goodale and "John Doe" conspired to deny Plaintiff parole based on lies including:   (1) claiming Plaintiff misrepresented facts to manipulate them into granting parole; (2) accusing Plaintiff of denying the offense of conviction; (3) accusing Plaintiff of having pending criminal charges, although the charges had been dismissed on June 21, 2023.   John Doe failed to intervene when Goodale denied Plaintiff parole on unconstitutional grounds.   Together, they conspired to deprive Plaintiff of his constitutional right to parole when there was no

basis for denial.    The hearing was presided over by NJSPB Members Jefferson and

"John Doe."    They used "non administrative codes" including:    "lack of insight

into criminal behavior, "risk assessment evaluation," and "insufficient problem

resolution" to deny parole.    These non-administrative codes "did not undergo the

procedure of the Administrative Procedure Act."    The Board issued Plaintiff an 18-

month parole denial.    In his supplemental complaint (Dkt. No. 3), Plaintiff alleges

that on July 7, 2023, NJSPB Members John Doe and Robert Goodale retaliated

against him by denying parole because he sued their superior, Samuel J. Plumeri, in

Civil Action No. 23-1821(RM[B]).[1]

 In summary, Plaintiff's grievances are that (1) he was framed for possession of

a firearm and CDS, which constituted a violation of his parole conditions and state

law; (2) rather than waiting for disposition on the state criminal charges, as per

NJSPB policy, Plaintiff's parole officer reported the criminal charges to another

parole officer who, in turn, improperly used an emergency exception to self-issue a

parole violator warrant without full Board approval.    The remaining NJSPB

Defendants, based on their belief in the false allegations in the arrest warrant and

---

[1] The Court takes judicial notice under Federal Rule of Evidence 201(b) that on or about
March 30, 2023, in Civil Action 23-1821(RMB) (D.N.J.), Plaintiff filed a petition for writ of
habeas corpus under 28 U.S.C. § 2241, seeking habeas relief on the parole warrant at issue
here.    Plaintiff voluntarily dismissed the case when he was released from his parole
violation sentence on November 3, 2023.    Plaintiff had not exhausted his state court
appeals prior to bringing his habeas petition.    (Civ. Action 23-1821, Dkt. Nos. 1, 3, 4, 5.)

parole warrant, placed a detainer on Plaintiff, preventing his release on bail pending the criminal charges.   Ultimately, the NJSPB revoked his parole for possession of a firearm, although the state charges were ultimately dismissed.   Plaintiff alleges he was not permitted to confront his accuser, Rodriguez, at the "probable cause" hearing.[2]   Plaintiff also challenges the NJSPB's subsequent denial of parole, premised on consideration of factors that did not undergo rulemaking procedures under the Administrative Procedure Act.

### 4.   Legal Claims Asserted in the Complaint

Plaintiff asserts jurisdiction under 42 U.S.C. § 1983.[3]   For his claims against Chairman Plumeri, Plaintiff alleges supervisory liability based on an unlawful custom of permitting parole revocations for firearm and drug possession prior to adjudication of the related criminal charges, a custom which caused his subordinates Keys, Murphy, Goodale, Jefferson, Cathel, Steinhardt and Cody to violate his rights under the Fourth and Fourteenth Amendments.   Plaintiff also challenges the constitutionality of parole conditions 11, 12, and 13.

Plaintiff alleges the following legal claims against the remaining defendants:

---

[2] See Compl. ¶ 31, Dkt. No. 1.   The Court assumes Plaintiff is referring to the preliminary revocation hearing.

[3] Although some of Plaintiff's claims sound in common law tort as well as under § 1983, Plaintiff has not specifically invoked state common law.   This Court has not construed the complaint to contain parallel state law claims because Plaintiff has not alleged that he filed a notice of claim under N.J.S.A. 59:8:8, a prerequisite to bringing state tort claims against a public entity or public employees in court.

(1) Keys—false imprisonment, substantive due process, procedural abuse, abuse of process, and conspiracy under 42 U.S.C. § 1985(3); (2) Murphy—false imprisonment, procedural abuse, procedural due process; (3) Goodale and Jefferson—false imprisonment, procedural abuse, civil conspiracy, failure to intervene; (4) Goodale— § 1985(3) conspiracy, First Amendment retaliation; (5) Cathel—false imprisonment, procedural abuse, procedural due process; (6) Steinhardt—false imprisonment, civil conspiracy, failure to intervene; (7) Cody— civil conspiracy, failure to intervene; (8) John Doe NJSPB Member—false imprisonment, civil conspiracy, failure to intervene, § 1985(3) conspiracy, First Amendment retaliation; (9) Shenk—civil conspiracy under 42 U.S.C. § 1985(3); (10) Pennsauken—supervisory liability for violation of Fourth and Fourteenth Amendments based on lack of training and discipline of police officers; (10) Rodriguez—false arrest and false imprisonment, abuse of process, substantive due process; (11) Matos—failure to intervene, civil conspiracy.

### 5.   Relief Sought in the Complaint

For relief, Plaintiff seeks compensatory damages, punitive damages and declaratory judgment.   (Compl., Dkt. No. 1 at 34-37, Dkt. Nos. 3, 5, 6.)

## B.  Analysis of Claims

### 1.   Legal Standard:   Due Process Protections for Revocation of Parole

"[A] parolee has no constitutional right to release on bail before a parole

revocation hearing." *Moss v. Pennsylvania*, 838 F. App'x 702, 707 (3d Cir. 2020) (per curiam) (citing *Luther v. Molina*, 627 F.2d 71, 76 n.10 (7th Cir. 1980)).    Parole revocation "deprives an individual … only of the conditional liberty properly dependent on observance of special parole restrictions."    *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).    Because parole revocation is not part of a criminal prosecution, the due process required is limited.    *Id.*    "The first stage [of parole revocation] occurs when the parolee is arrested and detained, usually at the direction of his parole officer."    *Id.* at 485.    At this stage, a preliminary hearing should be held "as promptly as convenient after arrest."    *Id.*    The hearing requirement is "not triggered when the warrant is placed as a detainer at an institution where the … parolee is already in custody awaiting disposal of an intervening charge or serving a sentence for a crime committed while on supervised release."    *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 93 (3d Cir. 2018) (per curiam) (quoting *United States v. Wickham*, 618 F.2d 1307, 1309, n.3 (9th Cir. 1979)). Rather, the duty to provide a hearing arises only when the parolee "is taken into custody as a parole violator by execution of the warrant," because "execution of the warrant and custody under that warrant [is] the operative event triggering any loss of liberty attendant upon parole revocation." *Moody v. Daggett*, 429 U.S. 78, 87 (1976) (alteration added).

At the preliminary hearing, the determination of "whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts

that would constitute a violation of parole conditions" … "should be made by someone not directly involved in the case" and may be handled by administrative officers. *Morrissey*, 408 U.S. at 486. Additionally,

> the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On request of the parolee, person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence.

*Id.* at 486–87.

The hearing officer has the duty to summarize the evidence and the parolee's responses, and determine, based on the information before him, whether there is probable cause to hold the parolee for a final decision by the parole board. *Id.* at 487.

To comport with due process, the second stage of parole revocation must provide an opportunity for a second hearing, if desired by the parolee, "prior to the final decision on revocation by the parole authority." *Id.* at 487-88. The minimum requirements of due process at the final revocation hearing include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer

12

> specifically finds good cause for not allowing
> confrontation); (e) a 'neutral and detached' hearing body
> such as a traditional parole board, members of which need
> not be judicial officers or lawyers; and (f) a written
> statement by the factfinders as to the evidence relied on
> and reasons for revoking parole.

*Id.* at 488–89.   The limited right to confront adverse witnesses stems from the Due

Process Clause, "not from the Confrontation Clause of the Sixth Amendment."

*United States v. Lloyd*, 566 F.3d 341, 343 (3d Cir. 2009) (citing *Gagnon v. Scarpelli*), 411

U.S. 778, 782 (1973)).

Pertinent here, in New Jersey, a parole officer may issue a parole violator

warrant as follows:

> (d) If an emergency exists and if the individual(s)
> authorized to issue warrants [described in subsections b,
> and c of the regulation] are not available, a parole officer
> may issue a warrant pending review by the individual(s)
> authorized to issue warrants…
>
> > 1. When a warrant is issued pursuant to (d) above,
> > the individual(s) authorized to issue warrants …
> > shall review the basis for the issuance of such
> > warrant within 48 hours of the issuance of the
> > warrant.
> >
> > 2. If such individual determines that the issuance of
> > the warrant is not necessary, the warrant shall be
> > immediately withdrawn.

N.J. Admin. Code § 10A:71-7.2(d).[4]

---

[4] Plaintiff's allegation that this New Jersey regulation is based on an erroneous
interpretation of a New Jersey statute fails to state a constitutional or federal law claim
under § 1983.

## 2.   Legal Standard:   Due Process Protections for Release on Parole

There is no protected liberty interest in release on parole.   *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 11 (1979); *Block v. Potter*, 631 F.2d 233, 235-36 (3d Cir. 1980).   Nonetheless, once a State adopts a parole system, a decision by a parole board cannot be arbitrary and capricious or based on constitutionally impermissible reasons, "such as race, religion or the exercise of free speech rights." *Block*, 631 F.2d at 236-37 (citing *Perry v. Sindermann*, 408 U.S. 593 (1972)); *Holmes v. Christie*, 14 F.4th 250, 267 (3d Cir. 2021) (substantive due process applies to parole release decisions "only when a parole board considers a factor that shocks the conscience") (internal quotation marks and citation omitted).

## 3.   Absolute Immunity of Parole Officers and Officials

Parole officers and officials are entitled to absolute immunity for their "adjudicatory duties."   *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989). Therefore, hearing examiners are entitled to absolute immunity for presiding over hearings.   *Id.* at 776.   Conducting parole interviews and determining whether to grant parole are also adjudicatory duties.   *Keller v. PA Bd. of Prob. & Parole*, 240 F. App'x 477, 480 (3d Cir. 2007) (per curiam).   When parole officers' actions are taken under their administrative, executive or investigative duties, they are entitled only to qualified immunity.   *Wilson*, 878 F.2d at 775.   Investigating parole violations and initiating criminal actions are examples of executive and investigative duties.   *Id.*

14

Plaintiff sued Defendants Murphy,[5] Goodale, Jefferson, Cathel, Steinhardt, Cody and John Doe NJSPB Member based solely on their adjudicatory roles in his parole revocation and subsequent denial of parole.   They are absolutely immune from Plaintiff's § 1983 claims for damages, with the exception of Plaintiff's First Amendment Retaliation claims against NJSPB Members Goodale and John Doe, addressed below.  The § 1983 claims for damages against these defendants in their individual capacities will be dismissed with prejudice.   Plaintiff's claims against Plumeri are based on his supervisory liability over these defendants.   Therefore, Plumeri is also entitled to absolute immunity based on his subordinates' adjudicatory actions, and the § 1983 claims for damages against Plumeri in his individual capacity will be dismissed with prejudice.

### 4.  First Amendment Retaliation Claims Against Goodale and John Doe

In his supplemental complaint, Plaintiff alleges NJSPB members Goodale and John Doe retaliated against him for suing Chairman Plumeri in Civil Action No. 23-1821(RMB) (D.N.J.)   (Dkt. No. 3.)   Civil Action No. 23-1821 is a petition for writ of habeas corpus where Petitioner challenged his parole violator warrant.   *See supra*

---

[5] Plaintiff alleged Murphy denied his right to procedural due process by not permitting him to face his accuser, Anthony Rodriguez, at the initial parole revocation proceeding. Executing the duties of a parole hearing examiner "is plainly an adjudicatory function" entitled to absolute immunity from a § 1983 suit for damages.   *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986).

15

n. 1.   The elements of a First Amendment retaliation claim under § 1983 are that: "(1) [the plaintiff] engaged in 'constitutionally protected conduct,' (2) the defendant engaged in 'retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and (3) 'a causal link [existed] between the constitutionally protected conduct and the retaliatory action.'"   *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (*Palardy v. Township of Millburn*, 906 F.3d 76, 80–81 (3d Cir. 2018) (quoting T*homas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)).

The proper respondent to a petition for writ of habeas corpus is usually "the person having custody of the person detained."   28 U.S.C. § 2243.   In the case of a habeas challenge to a state parole board decision, the chairman of the parole board is a proper respondent.   *See, e.g.*, *Hunterson v. DiSabato*, 308 F.3d 236 (3d. Cir. 2002), J*ones v. Cunningham*, 371 U.S. 236 (1963).   Thus, Chairman Plumeri was named as the respondent simply because he was the person having legal custody over Plaintiff in a habeas proceeding; he was not alleged to have personal liability for his conduct. Therefore, it is not plausible that Goodale and John Doe would retaliate against Plaintiff on behalf of Plumeri.   Plaintiff's First Amendment retaliation claims against Goodale and John Doe will be dismissed without prejudice.

### 5.   Section 1983 Claims Against Keys and Shenk

Plaintiff brings claims of false imprisonment, substantive due process, procedural abuse, abuse of process, and conspiracy under 42 U.S.C. § 1985(3)

16

against Parole Officer Keys, who issued a parole violator warrant against Plaintiff after Plaintiff's parole officer, Eric Shenk, reported Plaintiff's arrest for possession of a firearm and CDS.   "[T]he constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis."   *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000) (citations omitted).   Therefore, the Court will address Plaintiff's claim of false imprisonment under the Fourth Amendment rather than substantive due process.

"A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement."   *Id.*   Here, the parole violator warrant was intended to cause a detainer to be placed against Plaintiff's release, pending disposition of his criminal charges.   Based on Plaintiff's allegation that he would have been released on bail but for the detainer, he has sufficiently alleged the detainer constituted a seizure.   *See*, *e.g.*, *Davila v. United States*, 247 F. Supp. 3d 650, 662 (W.D. Pa. 2017) (holding that detention pursuant to a detainer constitutes a Fourth Amendment seizure where but for the detainer, the plaintiff would have been released) (citations omitted).

To state a false imprisonment claim, not only must a plaintiff allege facts indicating a Fourth Amendment seizure, he must also allege the defendant lacked probable cause.   Plaintiff alleges Keys lied about the existence of emergency circumstances for the parole violator warrant.   Apart from Plaintiff's disagreement with Keys' conclusion that Plaintiff posed a danger to the public, Plaintiff has not

17

clearly alleged what Keys said that was untrue.   Whether Keys had probable cause to issue the parole violator warrant depends on the facts and circumstances within Keys' knowledge at the time, and Plaintiff has not provided sufficient facts for the Court to analyze this claim.   *See, e.g., Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (defining standard for probable cause to arrest) (citing *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990) (citing *Dunaway v. New York*, 442 U.S. 200, 208 n. 9 (1979)).

Plaintiff also asserts claims of procedural abuse and abuse of process against Keys.   This Court is unaware of any common law tort in New Jersey for "procedural abuse."   Thus, the Court construes "procedural abuse" as a procedural due process claim.   Apart from his disagreement with Keys' conclusion that emergency circumstances existed for issuance of the parole violator warrant, Plaintiff has not alleged that he was deprived of a recognized procedural due process protection in connection with the issuance of the parole violator warrant. Therefore, the Court will dismiss Plaintiff's "procedural abuse" claim without prejudice.

Turning to Plaintiff's abuse of process claim against Keys, under New Jersey law, "a section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'"   *Rose v. Bartle*, 871 F.2d 331, 350 n. 17 (3d Cir. 1989) (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977)).   A necessary element of a New Jersey

18

malicious abuse of process claim is an ulterior motive for the use of legal process.

*Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1038 (3d Cir. 1988).   Plaintiff

fails to state a claim of abuse of process because he has not pled facts establishing

that Keys had an ulterior motive beyond obtaining a parole violator warrant.   This

claim will be dismissed without prejudice.

Finally, Plaintiff alleges Keys and Shenk conspired to deprive him of his rights

in violation of 42 U.S.C. § 1985(3).   "Section 1985(3) permits an action to be

brought by one injured by a conspiracy formed 'for the purpose of depriving, either

directly or indirectly, any person or class of persons of the equal protection of the

laws, or of equal privileges and immunities under the laws.'"   *Farber v. City of

Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)).   To state a

claim, a plaintiff must allege facts establishing:   "(1) a conspiracy; (2) for the purpose

of depriving, either directly or indirectly, any person or class of persons of the equal

protection of the laws, or of equal privileges and immunities under the laws; and (3)

an act in furtherance of the conspiracy; (4) whereby a person is injured in his person

or property or deprived of any right or privilege of a citizen of the United States." Id.

(citing *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983) (citing

*Griffin*, 403 U.S. at 102–03)).   Plaintiff has not alleged the elements of such a claim

in a non-conclusory manner.   Therefore, the conspiracy claims against Keys and

Shenk under § 1985(3) will be dismissed without prejudice.

### 6.   Constitutional Challenge to Parole Conditions

19

Plaintiff seeks declaratory relief[6] on his constitutional challenges to parole conditions 11 and 12.   Plaintiff's parole conditions 11 and 12 are general conditions of parole pursuant to N.J. Stat. Ann. § 30:4-123.59(b)(1)(a), which provides, in pertinent part:

> Each parolee shall agree, as evidenced by his signature to abide by specific conditions of parole established by the appropriate board panel which shall be enumerated in writing in a certificate of parole and shall be given to the parolee upon release. Such conditions shall include, among other things, a requirement that the parolee conduct himself in society in compliance with all laws and refrain from committing any crime, a requirement that the parolee will not own or possess any firearm as defined in subsection f. of N.J.S.2C:39-1 or any other weapon enumerated in subsection r. of N.J.S.2C:39-1, a requirement that the parolee refrain from the unlawful use, or the possession or distribution of a controlled dangerous substance, controlled substance analog or imitation controlled dangerous substance as defined in N.J.S.2C:35-2 and N.J.S.2C:35-11….

Plaintiff contends that when parole is revoked on conditions 11 and 12, which may also constitute the basis for criminal charges pending against the parolee, the parolee is stripped of his constitutional right to the presumption of innocence on his criminal charges.   (Compl., Dkt. No. 1 at 33.)   Plaintiff alleges that "the Board do[es] not honor acquittals, dismissals and exonerations.   The Board[] states that its

---

[6] After Plaintiff was released from confinement on his parole violator sentence, he altered his claims for prospective injunctive relief to claims for declaratory relief.   (Letter, Dkt. No. 5.)

rulings can contradict Criminal Court rulings."   (*Id.* at 34.)

The Supreme Court has held "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."   *Morrissey*, 408 U.S. at 480.   Parole revocations do not equate to criminal prosecutions "in any sense."   *Id.* at 489.   This is because parole "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."   *Id.* at 480.   For these reasons,

> [a] parole board may revoke parole on the basis of an offense that violates the conditions of parole even if the parolee is never criminally charged with the offense, or if he is acquitted or the charges are dismissed before trial. All that is required is the revocation be based on the board's independent, properly conducted procedures. *See Robinson v. Benson*, 570 F.2d 920 (10th Cir.1978); *United States v. Chambers*, 429 F.2d 410, 411–12 (3d Cir.1970). *See also Mullen v. U.S. Parole Commission*, 756 F.2d 74 (9th Cir.1985) (dismissal of criminal charges based on lack of prosecutorial merit does not bar the USPC's independent finding of a parole violation); *U.S. ex rel Carrasquillo v. Thomas*, 677 F.2d 225 (2d Cir.1982) (dismissal of criminal charges does not bar parole revocation based on the same conduct); *Standlee v. Rhay*, 557 F.2d 1303, 1303–07 (9th Cir.1977) (collateral estoppel does not bar parole revocation notwithstanding parolee's acquittal on criminal charges). "Ordinarily, probation may be revoked on the basis of conduct which falls short of criminal conduct." *Chambers*, 429 F.2d at 411 (citing *Burns v. United States*, 287 U.S. 216 (1932)).

*Bryant v. Jenkins*, No. CIV. 05-4469 (JBS), 2006 WL 1373182, at *3 (D.N.J. May 15, 2006); *see also Villarreal v. U.S. Parole Comm'n*, 985 F.2d 835, 839 (5th Cir. 1993)

(internal quotations and citations omitted) ("A criminal prosecution—governed by the reasonable doubt standard—and a parole revocation hearing are two very different proceedings. In the latter, the Government's burden of proof is considerably less."))   Therefore, Plaintiff fails to state a claim under § 1983 challenging his parole conditions 11 and 12.

The Court also construes the following allegations in the complaint as a Fourteenth Amendment equal protection claim:

> Parolees that are charged for weapons or a controlled dangerous substance face[] Parole revocation while their cases pend[] in Court.   On the other hand, parolees that are charged with non[-]criminal possession offenses maintain[] their due process right to not have their Parole supervision revoked while their criminal offense[s] pend[] in Court.

(Compl., Dkt. No. 1 at 36.)    Persons are "similarly situated" for purposes of an equal protection claim when "they are alike in all relevant aspects." *Castaneira v. Potteiger*, 621 F. App'x 116, 121 (3d Cir. 2015) (per curiam) (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir.2008)).   Plaintiff has not alleged that he was treated differently from a person similarly-situated to himself—to wit—a parolee charged with illegal weapon and CDS possession.   This claim will be dismissed without prejudice.

### 7.  Abuse of Process Claim against Rodriguez

To state a claim of abuse of process under § 1983, a plaintiff must allege the defendant had an ulterior motive that was "neither warranted nor authorized by the

process." *Phillips v. New Jersey Transit*, No. CV 19-13427, 2022 WL 462089, at *8 (D.N.J. Feb. 14, 2022) (quoting *Cluver v. Borough of Sayreville*, No. 10-3173, 2013 WL 394030, at *8 (D.N.J. Jan. 30, 2013), *aff'd*, 557 F. App'x 180 (3d Cir. 2014) (quoting *Ash v. Cohn*, 194 A. 174, 176 (N.J. 1937)).   Plaintiff alleges Rodriguez lied to a judicial officer to obtain an arrest warrant and then lied to a prosecutor during a grand jury hearing to obtain his indictment.   Thus, Plaintiff concluded, "Patrolman Anthony Rodriguez, abused the process of his office with the intentions of unlawful gain."   This allegation is wholly conclusory, Plaintiff has not alleged what ulterior motive Rodriguez had for the arrest.   Therefore, the abuse of process claim under § 1983 will be dismissed without prejudice.

### 8.   Substantive Due Process Claim against Rodriguez

"If a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843, 118 S. Ct. 1708, 1715, 140 L. Ed. 2d 1043 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272, n. 7 (1997)). Plaintiff's allegation of false imprisonment against Rodriguez is covered by the Fourth Amendment.   Therefore, Plaintiff's substantive due process claim will be analyzed under the more specific constitutional standard for false arrest and false imprisonment under the Fourth Amendment. The substantive due process claim against Rodriguez will be dismissed with prejudice, because amendment of this claim

is futile where the claim is governed by another constitutional amendment.

### 9.   False Arrest and False Imprisonment Claims Against Rodriguez

Plaintiff alleges Rodriguez arrested him for illegal possession of a firearm and CDS based on his lie that a witness told him Plaintiff had a gun in his backpack. Plaintiff also contests Rodriguez's statement that he and Matos saw Plaintiff running with a backpack, which was later found to contain a firearm and CDS. Additionally, Rodriguez said the incident was captured on body camera footage, which Plaintiff alleges is a lie because Plaintiff was unable to obtain the footage.

To determine whether a plaintiff alleged a plausible claim of false arrest and false imprisonment, the Court must look at the facts and circumstances within Rodriguez's knowledge at the time of the arrest to determine whether Plaintiff has adequately alleged lack of probable cause.   Taking as true Plaintiff's allegation that there was no witness who reported to Rodriguez that Plaintiff had a gun in his backpack, it is not clear how the encounter with Rodriguez and Matos began or how it unfolded and ended in Plaintiff's arrest.   To state a claim in an amended complaint, Plaintiff should allege the circumstances within Rodriguez's knowledge leading up to the arrest, the who, what, where, why and how the arrest came about. The Court will dismiss the false arrest and false imprisonment claims under § 1983 against Rodriguez without prejudice.

### 10.   Failure to Intervene Claim Against Matos

Plaintiff alleges Police Officer Matos failed to intervene when Rodriguez

falsely arrested and imprisoned him for possession of a firearm and CDS.

Generally, the elements of a failure to intervene claim are that a police officer either

refused or failed to intervene when a constitutional violation took place in his

presence.  *Ekwunife v. City of Philadelphia*, 756 F. App'x 165, 170 (3d Cir. 2018) (per

curiam) (citing *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)).   Plaintiff's

failure to intervene claim will be dismissed without prejudice because Plaintiff has

failed to allege sufficient facts to state an underlying false arrest or false

imprisonment claim under § 1983 against Rodriguez.

### 11.   Civil Conspiracy Claim Against Matos

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that

persons acting under color of state law 'reached an understanding' to deprive him of

his constitutional rights."   *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d

Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). Plaintiff

has failed to allege sufficient facts concerning his arrest to establish that he was

deprived of his constitutional rights.   Therefore, Plaintiff fails to state a conspiracy

claim under § 1983, and the claim will be dismissed without prejudice.

### 12.   Municipal Liability for False Arrest and False Imprisonment

Plaintiff alleges the Township of Pennsauken's failure to train and discipline

its police officers caused Rodriguez and Matos to falsely arrest and imprison him.

Plaintiff has not alleged sufficient facts to establish false arrest.   Even if Plaintiff is

able to state a false arrest/imprisonment claim against Rodriguez in an amended

complaint, a municipality's failure to train police officers "'serve[s] as [a] basis for §
1983 liability only where [it] … amounts to deliberate indifference to the rights of
persons with whom the police come into contact.'"   *Est. of Roman v. City of Newark*
("*Roman*"), 914 F.3d 789, 798 (3d Cir. 2019) (quoting *City of Canton v. Harris*, 489
U.S. 378, 388, (1989) (alterations added and footnote omitted in *Roman*).   In this
context, deliberate indifference may be pled by showing:   "(1) municipal
policymakers know that employees will confront a particular situation[;] (2) the
situation involves a difficult choice or a history of employees mishandling[;] and (3)
the wrong choice by an employee will frequently cause deprivation of constitutional
rights."   *Id.* (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011)
(internal quotation marks omitted in *Roman*) (quoting *Carter v. City of Philadelphia*,
181 F.3d 339, 357 (3d Cir. 1999)).   To state a failure to train claim, a plaintiff must
allege a "deficiency in a training program" that is "closely related to the alleged
constitutional injury."   *Forrest v. Parry*, 930 F.3d 93, 109 (3d Cir. 2019).   Plaintiff's
failure to train claim is conclusory because he has not identified any particular
deficiency in Pennsauken's police training, nor has Plaintiff alleged facts indicating a
history of police officers in Pennsauken framing and falsely arresting its citizens.

Plaintiff also alleges that Pennsauken's failure to discipline corrupt officers in
the past caused Rodriguez and Matos to falsely arrest and imprison him.   In support
of this claim, Plaintiff alleges only that an officer in the Internal Affairs Department
ignored his complaint.   Plaintiff's allegations fail to state a claim of municipal

liability under § 1983, and the Court will dismiss the claims against Pennsauken without prejudice.

## III.   CONCLUSION

For the reasons discussed above:   (1) Plaintiff's IFP application will be granted; (2) Plumeri, Murphy, Goodale, Jefferson, Cathel, Steinhardt, Cody and John Doe(s) NJSPB Member have absolute immunity in their individual capacities from Plaintiff's § 1983 and § 1985(3) damages claims, and these claims will be dismissed with prejudice, with the exception of Plaintiff's First Amendment retaliation claims against Goodale and John Doe, which will be dismissed without prejudice for failure to state a claim; Plaintiff's § 1983 claims against all NJSPB Members based the constitutionality of parole conditions 11 and 12 will be dismissed with prejudice for failure to state a claim; Plaintiff's § 1983 claims of false arrest and false imprisonment against Rodriguez in his individual capacity will be dismissed without prejudice; Plaintiff's § 1983 claim of substantive due process against Rodriguez in his individual capacity will be dismissed with prejudice; Plaintiff's § 1983 failure to intervene and civil conspiracy claims against Matos in his individual capacity will be dismissed without prejudice; Plaintiff's § 1983 claims against the Township of Pennsauken for failure to train and discipline Rodriguez and Matos will be dismissed without prejudice.

An appropriate order follows.


DATE:   **June 10, 2024**                    s/Renée Marie Bumb
                                             Renée Marie Bumb
                                             Chief United States District Judge